UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MISTY SMITH, | Case No. 18-11452 |
| Plaintiff | Terrence G. Berg |
| v. | United States District Judge |
| COMMISSIONER OF SOCIAL SECURITY, | Stephanie Dawkins Davis<br>United State Magistrate Judge |
| Defendant.<br>_____/ | |

**REPORT AND RECOMMENDATION
<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 14)</u>**

**I. PROCEDURAL HISTORY**

  A. <u>Proceedings in this Court</u>

  On May 8, 2018, plaintiff Misty Smith filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). District Judge Terrence G. Berg referred this matter to the undersigned for all pre-trial purposes. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. 11, 14).

B.  <u>Administrative Proceedings</u>[1]

Smith filed the instant claim for supplemental security income (SSI) on February 28, 2013, alleging disability beginning March 15, 2004.[2] (Tr. 13). The claims were initially denied by the Commissioner on August 1, 2013. (Tr. 13). Smith requested a hearing, and on December 2, 2014, she appeared and testified, with the assistance of her attorney, before Administrative Law Judge (ALJ Kim) Mark Kim, who considered the case *de novo*. (Tr. 55-85). At the hearing, Smith amended her alleged onset date to May 17, 2012. (Tr. 15, 36, 61). In a decision dated January 30, 2015, ALJ Kim found that Smith was not disabled. (Tr. 109-122). Smith requested a review of this decision, which was granted by the Appeals Council. On June 22, 2016, the Appeals Council remanded the matter back to the ALJ to address several issues. (Tr. 127-133). ALJ JoErin O'Leary held a hearing after remand on November 8, 2016. (Tr. 32-54). On December 7, 2016, ALJ O'Leary issued a decision finding that Smith was not disabled. (Tr. 12-26). ALJ

---

[1] The Transcript of Social Security Proceedings is cited to throughout this Report and Recommendation as "Tr.," and found at Docket Entry 8.

[2] According to the January 30, 2015 decision, Smith filed an application for disability insurance benefits and supplemental security income on February 28, 2013 alleging disability beginning March 15, 2004. (Tr. 112). The application in the record appears to be dated March 28, 2013 and Smith applied for period of disability, all insurance benefits for which she was eligible under Title II and Title XVIII, along with child survivor benefits. (Tr. 255-263). In that application, Smith says she became unable to work on April 1, 2008. *Id*. These discrepancies do not appear to affect the disputed issue in this case and only the determination on her SSI application is the subject of this appeal.

2

O'Leary's decision became the final decision of the Commissioner when the Appeals Council denied Smith's request for review on March 6, 2018. (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that the court **DENY** plaintiff's motion for summary judgment, **GRANT** the Commissioner's motion for summary judgment, and **AFFIRM** findings of the Commissioner.

## II.   FACTUAL BACKGROUND

Smith was born in 1985 and was 27 years old on the application date. (Tr. 24). Smith has a high school education and has no past relevant work, although she did work as a fast food cook, a home health aide, in a gas station stocking shelves, and as a farm hand. (Tr. 24-25, 65-67). She lives with her two young children and a friend. (Tr. 65).

The ALJ applied the five-step disability analysis to Smith's claim and found at step one that she had not engaged in substantial gainful activity since the application date. (Tr. 17). At step two, the ALJ found that Smith's lumbar degenerative disc disease, lumbar spondylolisthesis and disc collapse at L5-S1 pars defect were severe impairments. (Tr. 16). At step three, the ALJ found no evidence that Smith's impairments met or equaled one of the listings in the

3

regulations. (Tr. 19). The ALJ determined that Smith has the following residual functional capacity (RFC):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can sit for six hours per day, stand for one hour per day, and walk for one hour per day. She must alternate to standing for five minutes after 30 minutes of sitting. The claimant must alternate to sitting for five minutes after 30 minutes of standing. The claimant must alternate to sitting for five minutes after 30 minutes of walking. She can occasionally operate foot controls and frequently handle, finger, feel, and reach in all directions, including overhead. The claimant can occasionally climb ramps and stairs, balance, stoop, and kneel but never crouch, crawl, or climb ladders, ropes, or scaffolds. She can occasionally operate a motor vehicle commercially and be exposed to weather, humidity, wetness, dust, odors, fumes, pulmonary irritants, and occupational vibration. The claimant can never work with unprotected heights, dangerous moving mechanical parts, extreme cold, and extreme heat.

(Tr. 20). At step four, the ALJ concluded that Smith had no past relevant work. (Tr. 24-25). At step five, the ALJ concluded that, with her RFC, Smith could perform jobs that existed in sufficient numbers in the national economy and thus, she has not been under a disability since the application date. (Tr. 25-26).

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled before their insured status expires. Whereas, Title XVI benefits are available to poverty-stricken adults and children who become disabled. While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). F. Bloch, Federal Disability Law and Practice § 1.1 (1984). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined by applying the five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520,

416.920. Essentially, the ALJ must determine whether: (1) the claimant is engaged in significant gainful activity; (2) the claimant has any severe impairment(s); (3) the claimant's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the claimant can perform. (*Id*.). "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

Smith contends that the ALJ erred by failing to obtain an expert medical opinion regarding medical equivalency as required by SSR 17-2p. According to Smith, medical equivalence can be found if an individual has an impairment that is described in the listings, but either does not exhibit one or more of the findings specified in the listing or the individual exhibits all the findings, but one or more of the findings is not as severe as specified in the listing. Smith argues that there are objective findings in the record that required the ALJ to obtain a medical expert opinion because the requirements of Listing 1.04(A) are nearly all met. Smith only argues that Listing 1.04(A) is applicable, which requires:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

10

Smith points to the following objective findings to support her argument that the ALJ was required to obtain the opinion of a medical advisor on the issue of equivalence:

- The May 22, 2012 MRI of the lumbar spine was significant for marked chronic degenerative changes at L5-S1 with neural foramina stenosis which may impinge on the right S1 nerve root. (Tr. 368).
- Reports consistently documented back pain radiating into the lower extremities. (Tr. 368 (5/22/12), 408 (10/22/12), 433 (5/16/13), 584 (5/2/14),[3] 653 (5/7/12)).
- The record indicated limitation of motion in the lumbar spine throughout the medical evidence. (Tr. 411 (9/13/12), 434 (5/16/13), 590 (3/7/14)).
- The record establishes positive straight leg raise tests. (Tr. 434 (5/16/13), 590 (3/7/14)).
- The record notes motor loss characterized by muscle weakness and numbness. (Tr. 354 (6/20/12), 619 (2/4/14)).

In response, the Commissioner correctly points out that SSR 17-2-p, which became effective on March 27, 2017, does not apply here, given that the ALJ issued her decision in December 2016. Instead, SSR 96-6p is applicable. The

---

[3] This post-surgical treatment note mentions back and leg pain but does not mention "radiating" pain.

Commissioner concedes that no state agency physician considered the equivalency issue but maintains that SSR 96-6p is "unclear" regarding whether such an opinion is required. Regardless, the Commissioner contends that even if SSR 96-6p requires an opinion on equivalence, Smith still retains (and fails to meet) her burden to present evidence of equivalence. As such, the Commissioner argues that any error is harmless because Smith does not identify a basis for questioning the ALJ's finding.

The Commissioner is generally required to have a medical opinion to support the equivalency analysis. *See e.g.*, *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)). Even though the ALJ may have erred by not obtaining an opinion on equivalence as to Listing 1.04(A), the undersigned suggests that any such error is harmless. *See Lusk v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 405, 411 (6th Cir. 2004) (to show equivalence, the plaintiff must "present medical evidence that describes how his impairment is equivalent to a listed impairment"); *Bondy v. Comm'r of Soc. Sec.*, 2015 WL 1530435, at *20 (E.D. Mich. Mar. 31, 2015) (Murphy, J.); *Buchanon v.*

*Comm'r of Soc. Sec.*, 2015 WL 927831, at *6-7 (E.D. Mich. Mar. 4, 2015) (Steeh, J.). Although courts in this district generally remand when the record contains "no equivalence opinion whatsoever," they also acknowledge that "the lack of a medical opinion on equivalence can be deemed harmless error in some cases." *Bukowski v. Comm'r of Soc. Sec.*, 2014 WL 4823861, at *6 (E.D. Mich. Sept. 26, 2014) (Michelson, J.); *see also Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 655-58 (6th Cir. 2009) (applying harmless-error analysis in context of ALJ's step-three findings). Here, the evidence does not suggest that Smith could reasonably meet or equal Listing 1.04(A). To show that the error was not harmless, Smith would need to come forward with some evidence to suggest that there was a reasonable possibility of a finding of equivalence. *Brown v. Comm'r of Soc. Sec.*, 2014 WL 222760, at *13 (E.D. Mich. Jan. 21, 2014) (Drain, J.) (The lack of an expert opinion on whether the claimant's physical impairments medically equal any listed impairment is clear error and requires remand where the record is not so lacking in medical findings that a finding of equivalence is implausible.).

Unlike the plaintiff in *Brown*, Smith has not shown that a finding of equivalence is plausible here. The undersigned agrees with the Commissioner that there is no evidence of nerve root compromise along with the additional findings required by listing 1.04A either before or after Smith's spinal fusion surgery. (Tr. 19). On May 22, 2012, an MRI of the lumbar spine revealed "[m]oderate

degenerative change at L5-S1 with moderate discogenic narrowing and moderate right neural foramina stenosis which may impinge on the right SI nerve root." (Tr. 368; see Tr. 18). An EMG study in July 2012 did not show any evidence to suggest lumbosacral radiculopathy, plexopathy or peripheral neuropathy (Tr. 20, 362). An MRI of the lumbar spine in December 2013 did not mention any nerve root compression. (Tr. 21, 622).

Smith underwent a lumbar fusion surgery in March 2014. (Tr. 18, 21, 547-48, 584). The post-surgical findings are generally unremarkable and do not suggest that Smith could medically equal Listing 1.04(A). More specifically, on April 1, 2014, Smith had full range of motion all extremities, no joint tenderness or swelling, and equal flexion and extension of the lower extremities bilaterally. (Tr. 544). Her sensation, coordination, and motor strength were within functional limits. (Tr. 535). Smith's treating neurosurgeon, Dr. Gerald Schell, noted that Smith seemed to be making pretty good progress just after surgery. (Tr. 513). On May 2, 2014, Dr. Schell indicated that Smith was coming along well after her surgery. (Tr. 584). He stated that she was making slow progress but had a normal assessment without neurologic deficits. *Id.* On March 17, 2015, Smith denied weakness, fatigue, or decreased activity. (Tr. 675). On July 1, 2015, Smith had normal range of motion with no deformity and her strength was 5/5 in all

extremities. (Tr. 695). On July 15, 2015, she had normal range of motion and gait. (Tr. 682).

Finally, on August 17, 2016, Dr. Sankaran, the consulting examiner, found negative straight-leg raising, a tender lumbar area, muscle spasm, painful and tender right hip on abduction and extension with minimal limitation of motion. (Tr. 605). While Dr. Sankaran did not have the benefit of Smith's medical records to review in conjunction with his examination of Smith, he concluded that she was able to lift and carry up to 10 pounds occasionally, she could sit, stand, and walk for 30 minutes at a time, she could sit six hours in a day, stand one hour in a day, walk one hour in a day, and that she did not need a walking assistance device. (Tr. 606-607).

This case is similar to *Spencer v. Comm'r of Soc. Sec.*, 2018 WL 7502565, *5 (E.D. Mich. Dec. 19, 2018), report and recommendation adopted, 2019 WL 1002506 (E.D. Mich. Feb. 28, 2019) where, despite the lack of a medical opinion on equivalence, the error was found to be harmless. In *Spencer*, the medical evidence from before and after the plaintiff's spinal surgery reflected that the plaintiff generally presented with full strength, range of motion, sensation, and reflexes. As a result, the court concluded that the objective medical evidence of record did not support a finding that the plaintiff's impairments could have sustained a level of severity to medically equal Listing 1.04(A) for a period of 12

15

months. Accordingly, the court found it "highly likely that the ALJ would have reached the same determination at step three even if there had been a medical opinion on the issue" and thus, any error was harmless. *Id*. *See also Perez v. Comm'r of Soc. Sec.*, 2016 WL 8094530, at *3 (E.D. Mich. Sept. 22, 2016) (harmless error existed where there was no evidence of musculoskeletal abnormalities during the balance of the year-long period following the claimant's injury and surgery). Here, Smith points to a single post-surgical record to show continuing "radiating pain" (see note 3) but fails to demonstrate how that or any other medical evidence in the record shows that she can plausibly equal Listing 1.04(A). The absence of such a demonstrable link stands in stark contrast to the records cited above showing a significant improvement of symptoms after Smith's fusion surgery and no signs of nerve root compression, no positive straight-leg raising, and no evidence of radiating pain after surgery. Based on the foregoing, the undersigned concludes that Smith did not meet her burden to show that the ALJ's failure to obtain a medical opinion on equivalence was more than harmless error.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the court **DENY** plaintiff's motion for summary judgment, **GRANT** the

Commissioner's motion for summary judgment, and **AFFIRM** findings of the Commissioner.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc. If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: June 30, 2019                     s/Stephanie Dawkins Davis
                                        Stephanie Dawkins Davis
                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on June 30, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
